**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALBERT EDWARD WHEELER, III,** | : | **Civil No.  1:19-CV-1340** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

## I.   Introduction

In Albert Wheeler's case we most assuredly do not write upon a blank slate. Quite the contrary, this is Wheeler's second Social Security Appeal in a case that has spanned the past seven years. In March of 2018, this court remanded Wheeler's case for further consideration by the Commissioner, finding that the Administrative Law Judge (ALJ) had provided an insufficient explanation for the decision to give greater weight to the opinion of a non-examining, non-treating state agency expert than the opinion expressed by Wheeler's treating physician. Wheeler v. Berryhill, No. 3:16-CV-01916, 2018 WL 1528763, at *10 (M.D. Pa. Mar. 8, 2018), report and recommendation adopted, No. 3:16-CV-1916, 2018 WL 1518572 (M.D. Pa. Mar. 28, 2018). At the time of this decision, there were only two medical opinions on record in these administrative proceedings, the treating source opinion of Dr.

Falvello and a non-examining state agency doctor's opinion provided by Dr. Gryczko. Id.

Following this remand, additional medical evidence and opinions were obtained. There are now four medical opinions of record in this appeal. Three of these medical opinions conclude that Wheeler retains the residual functional capacity to perform either light or sedentary work. Considering this additional evidence, along with treatment notes from two physicians, and several independent reports concerning Wheeler's activities of daily living, the ALJ found that Wheeler could perform a limited range of sedentary work, and denied his disability claim.

This appeal then ensued. In considering this, Wheeler's second appeal, we are mindful that we are required to apply a deferential standard of review to the well-articulated findings of the ALJ. Indeed, the Supreme Court has recently underscored for us the limited scope of our review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks

omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, three medical sources have now opined that Wheeler could perform a limited range of work. These three opinions are based upon test results, as well as clinical and anecdotal reports which contain sufficient evidence to support the agency's factual determinations. Therefore, mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Accordingly, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   **Statement of Facts and of the Case**

Albert Wheeler initially applied for disability benefits nearly seven years ago. On August 10, 2013, Wheeler applied for disability benefits pursuant to Title II of the Social Security Act, alleging an onset date of disability beginning July 26, 2013. (Tr. 16). According to Wheeler he had become totally disabled due to degenerative disc disease and joint disease in his knees. (Tr. 18). Wheeler was born in 1969 and was 43 years old at the time of the alleged onset of his disability, making him a

younger worker under the Commissioner's regulations. (Tr. 25). He had a high school education and prior employment as a forklift operator and shipping clerk. (Id.)

In April of 2015, following an administrative hearing (Tr. 31-64), the ALJ entered a decision denying Wheeler's disability claim. (Tr. 13-30). In this decision the ALJ found that, notwithstanding his impairments, Wheeler retained the residual functional capacity to perform a range of sedentary work. (Tr. 20). In reaching this decision, the ALJ considered the only two medical opinions that were in the administrative record—a July 21, 2014 check block form completed by a treating source, Dr. Falvello (Tr. 302-07) and a September 23, 2013 non-examining, non-treating state agency expert opinion rendered by Dr. Gryczko. (Tr. 88-92). These two medical evaluations presented very different assessments of Wheeler's capabilities. For his part, Dr. Falvello opined that Wheeler was totally disabled. In contrast, Dr. Gryczko stated that he believed Wheeler could perform light work. The ALJ's 2015 decision afforded greater weight to the state agency expert opinion than the treating source opinion of Dr. Falvello, reasoning that the state agency opinion was more congruent with the clinical and anecdotal evidence regarding Wheeler's impairments, condition, limitations, treatment and activities of daily living. (Tr. 23-25). Wheeler appealed this agency ruling and in March of 2018, this court remanded this case for further consideration by the Commissioner, finding that the ALJ had

provided an insufficient explanation for the decision to give greater weight to the opinion of a non-examining, non-treating state agency expert than the opinion expressed by Wheeler's treating physician. Wheeler v. Berryhill, No. 3:16-CV-01916, 2018 WL 1528763, at *10 (M.D. Pa. Mar. 8, 2018), report and recommendation adopted, No. 3:16-CV-1916, 2018 WL 1518572 (M.D. Pa. Mar. 28, 2018).

Additional administrative proceedings then ensued. In the course of these proceedings, the ALJ received further testimony and information regarding Wheeler's medical conditions, impairments, and activities of daily living. The ALJ was also provided extensive and updated clinical and treatment records for Wheeler. (Tr. 777-1419). This extensive documentation presented a mixed picture regarding the degree to which Wheeler's impairments were wholly disabling. For example, at the time he applied for disability benefits, Wheeler was employed and was working 12-hour shifts at a plant. (Tr. 166). Wheeler's wife, in turn, completed a function report in support of this disability application, which stated that Wheeler had significant difficulties with self-care, but acknowledged that he was able to get his teenage son off to school, work the third shift, prepare meals, including meals with several courses, help with his son's homework, play with him, take care of his dogs, do light cleaning, fold laundry, wash dishes, do small household repairs, do some yardwork, go outside daily, go shopping in stores, build model cars, modify action

figures for his son, play video games, go out on dates with his spouse, and go on weekly outings to his family's homes. (Tr. 167-73). Similarly, during his first administrative hearing in this case, Wheeler described his impairments but testified that he helped to take care of his teenage son, cooked for him, helped him with his laundry and homework, shopped in stores, did some light cleaning, washed dishes, did some small household repairs and some yard work, cared for his two dogs, played video games, could comfortably lift 10 pounds, built models as a hobby and occasionally  helped his son during football season by tossing the football with him. (Tr. 43, 51-54).

Clinical records also presented an equivocal portrait regarding the severity of Wheeler's symptoms.  At times Wheeler reported pain and tenderness in back and knees. (Tr. 312, 325, 342, 343, 347, 1113). However, these reports were episodic. Thus, by February 2017, Wheeler indicated that he experienced 50-70% pain relief with the injections and stated that his average daily pain was 2-3/10. (Tr. 1309). Likewise in April 2017, Wheeler denied significant lumbar pain. (Tr. 1302). In October 2017, Wheeler stated that his pain was a 1/10, and with prolonged walking and standing a 5/10. (Tr. 1277). According to Wheeler, he was walking one mile daily with his weight loss program. (Tr. 1277). Six months later, in early March 2018, Wheeler described his average daily pain as a 1-2/10. (Tr. 1274). Further, on occasion when Wheeler reported pain and discomfort, it was associated with

physical labor far beyond the requirements of sedentary work. For example, In August 2018, Wheeler told Dr. Falvello that he had increased shoulder pain from working on his car. (Tr. 1384).

Aside from Wheeler's well-documented, but somewhat equivocal, reports of his symptoms, these clinical records also provided a mixed picture of the degree to which his back and knee symptoms were disabling. From 2013 through 2018, caregivers often noted that Wheeler maintained a full or significant range of motion, normal strength and reflexes, and showed negative straight leg raising test results. (Tr. 343, 347, 352, 355, 1113). Further, with the exception of an arthroscopic procedure on his knee, the course of treatment prescribed for Wheeler during this time span was relatively conservative, consisting of ice, exercise, cortisone shots, chiropractic care, physical therapy, and pain medications which Wheeler reported provided him with significant relief. (Tr. 325, 356, 359, 962, 964-66, 971-79, 983, 1068, 1302, 1309).

Finally, by 2019, the administrative record contained two additional medical expert opinions relating to Wheeler's capacity to perform some work notwithstanding his impairments. Both of these subsequent medical opinions concluded that Wheeler could perform some work and discounted the extreme disabling limitations found by Dr. Falvello in 2014. First, Dr. Michael Lombard, a state agency expert, provided an assessment based upon a more complete body of

Wheeler's medical records on January 20, 2017. (Tr. 567-74). Following this records review, Dr. Lombard concluded that that Wheeler was not disabled but rather could perform sedentary work. (Id.) Later, on January 24, 2019, Dr. David Owens, a physician who possessed an active-retired license, testified as an expert witness at Wheeler's second administrative disability hearing. (Tr. 403-23). At the time of the hearing, Dr. Owens' qualifications as a medical expert witness were not questioned and the doctor was accepted without objection as a medical expert. (Tr. 404).

Dr. Owens testified that he had had access to all of Wheeler's medical records through August of 2018. (Tr. 405). Thus, Dr. Owens had the opportunity to consider the most complete body of medical, clinical evidence, and was able to examine numerous records that were created after Dr. Falvello expressed his July 2014 medical opinion. Based upon this comprehensive medical record review, Dr. Owens concluded that Wheeler retained the ability to perform sedentary work and discounted Dr. Falvello's 2014 opinion that Wheeler's impairments were so severe that his condition met a listing requirement. (Tr. 408-09).

Therefore, by 2019, four physicians had evaluated Wheeler and offered medical opinions concerning his ability to work. Of these four medical opinions, three found that he retained the residual functional capacity to perform at least a limited range of sedentary work; one opinion concluded that he was wholly disabled.

It is against this clinical backdrop that a hearing was held on this disability application on January 24, 2019, where Wheeler, Dr. Owens and a Vocational Expert appeared and testified. (Tr. 386-432). Following this hearing, the ALJ issued a decision on April 10, 2019 denying this application for benefits, finding that Wheeler remained capable of performing a range of sedentary jobs in the national economy. (Tr. 361-79).

In that decision, the ALJ first concluded the Wheeler met the insured status requirements of the Social Security Act from the date of his alleged onset of disability through December 31, 2018. (Tr. 366). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Wheeler suffered from an array of severe impairments, including obesity, degenerative disc disease, diabetes, arthritis in his lower extremities, joint disease, neuropathy, carpel tunnel syndrome, as well as knee and elbow pain. (Tr. 366-67). At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 367-68).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), which considered all of Wheeler's limitations from his impairments and found that he could perform a limited range of sedentary work notwithstanding these impairments. (Tr. 368-69). In making this RFC determination, the ALJ engaged in a lengthy, and carefully detailed discussion and analysis of Wheeler treatment history.

(Tr. 369-77). This treatment history analysis documented Wheeler's orthopedic care over time, recording his impairments due to degenerative disc disease and arthritis., but also describing the medical findings which indicated that he had a good range of motion and was able to manage his pain through medication, physical therapy and exercise. (Tr. 369-73). In addition, this medical recital documented the fairly conservative course of treatment which Wheeler received for these conditions. (Id.) This analysis also expressly considered the way in which Wheeler's weight, and diabetes, affected these underlying conditions. (Tr. 373-74). The ALJ then expressly incorporated these clinical findings into the RFC assessment in this case. (Tr. 374). Further, the ALJ's analysis took in account Wheeler's activities of daily living, which included walking with the assistance of a cane, light housework and yard work, and some activities with his son. (Tr. 374). Ultimately the ALJ found that: "In balancing the level of activities with the claimant's subjective reports and the objective medical evidence, these activities are more consistent with a range of sedentary function." (Id.)

Finally, the ALJ separately evaluated each of the medical opinions offered in this case, beginning with the July 2014 treating source opinion of Dr. Falvello. (Tr. 375). The ALJ gave this opinion partial weight to the extent that it identified limitations that were consistent with sedentary work. (Id.) The ALJ declined to give further weight to this opinion, however, noting that the finding of disability by Dr.

Falvello was inconsistent with some of the treatment records of Dr. Falvello and a second treating physician, Dr. Duffy. (Id.)

The ALJ gave great weight to the opinion of Dr. Owens, who testified at Wheeler's second disability hearing in January of 2019 that Wheeler could perform sedentary work. (Tr. 375-76). On this score, the ALJ reasoned that Dr. Owens had access to the most extensive body of clinical evidence spanning through 2018 and possessed access to years of medical records which post-dated Dr. Falvello's July 2014 opinion. (Id.) The ALJ determined that this opinion deserved great weight because it was more congruent with the clinical evidence, which contained many findings within normal limits, and was more consistent with Wheeler's reported activities of daily living. (Tr. 376). The ALJ also gave some weight to the 2013 opinion of Dr. Gryczko, the state agency expert, but found that subsequent medical developments suggested a greater degree of impairment than the light work RFC found by Dr. Gryczko in 2013. (Tr. 377).

Having arrived at this RFC assessment based upon an evaluation of these clinical records, medical opinions, and the claimant's statements, the ALJ found at Step 4 that Wheeler could not perform his past work. (Tr. 377). However, at Step 5, the ALJ found that there were a number of sedentary work jobs in the national economy that he could perform. (Tr. 378-79). Accordingly, the ALJ concluded that

Wheeler did not meet the stringent standard for disability set by the Social Security Act and denied this disability claim.  (Id.)

This appeal followed. (Doc. 1). On appeal, Wheeler contends the ALJ erred in relying upon Dr. Owens' opinion and attacks the doctor's qualifications, arguing that his licensure status as active-retired precluded him from testifying as an expert witness. Wheeler advances argument even though he conceded that Dr. Owens was qualified as a medical expert at the time of the administrative hearing. In addition, Wheeler contends that the ALJ erred in the weighing of this medical opinion evidence and in the evaluation of the severity of Wheeler's symptoms. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

## III.  <u>Discussion</u>

### A.    <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. <u>See</u> 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial

> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined

to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.     Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." <u>Burnett v. Comm'r</u>

of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the

proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living to fashion an RFC, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F. Supp. 3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by

substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002); <u>see also</u> <u>Metzger v. Berryhill</u>, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom.</u> <u>Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience, and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d

Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C.   Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence and Lay Testimony

The Commissioner's regulations which apply to this case also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

In deciding what weight to accord competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. See 20 C.F.R. § 404.1527(c)(2)

("Generally, we give more weight to opinions from your treating sources . . . ."); 20 C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by a number of different medical sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when

presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

Moreover, when examining various medical opinions we are enjoined to also consider that:

> [I]n determining the weight to be given to a medical source opinion, it is also well-settled that an ALJ may discount such an opinion when it

conflicts with other objective tests or examination results. <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the source's medical opinion, and the treating doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. <u>Torres v. Barnhart</u>, 139 Fed. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." <u>Tilton v. Colvin</u>, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).

<u>Falcone v. Berryhill</u>, No. 3:16-CV-1705, 2017 WL 7222358, at *9 (M.D. Pa. Nov. 29, 2017), <u>report and recommendation adopted</u>, No. 3:16CV1705, 2018 WL 646489 (M.D. Pa. Jan. 31, 2018).

Similar considerations govern an ALJ's evaluation of lay testimony. When evaluating lay testimony regarding a claimant's reported degree of disability, we are reminded that:

[T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. <u>See</u> <u>Diaz v. Comm'r</u>, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses . . . ."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. <u>Adorno v. Shalala</u>, 40 F.3d 43, 48 (3d Cir. 1994) (citing <u>Stewart v. Sec'y of Health, Education and Welfare</u>, 714 F.2d 287, 290 (3d Cir. 1983)); <u>see also</u> <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. <u>Ray v. Astrue</u>, 649 F. Supp. 2d 391, 402 (E.D. Pa. 2009) (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

> Yet, it is also clear that:

>> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed. App'x 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363

(3d. Cir. 2011) (referencing 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence, or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms

and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

## D.    <u>The ALJ's Decision in this Case is Supported by Substantial Evidence.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence," <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019). Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's decision that Wheeler was not entirely disabled but could perform a limited range of sedentary work.

At the outset, in this appeal Wheeler challenges the ALJ's reliance upon the medical opinion of Dr. Owens, the expert who testified at the January 2019 administrative hearing that he could perform some sedentary work. Wheeler's threshold attack upon this testimony questions Dr. Owens' qualifications as an expert witness, arguing that the doctor was not competent to render a medical opinion due to the fact that his license status was active-retired.

This argument warrants only brief consideration since at the time of this administrative hearing Wheeler expressly accepted Dr. Owens' expert qualifications. At that time the following exchange took place between the ALJ and Wheeler's counsel after Dr. Owens was questioned by counsel regarding his qualifications and expertise:

ALJ:  Do you have any objections to my qualifying him as a medical expert?

ATTY: No, no, ma'am.

(Tr. 404).

In our view, this exchange between the ALJ and Wheeler's counsel constituted an unambiguous waiver of any objection to the qualifications of this witness. In a Social Security setting, case law is legion that a failure to object to an expert's qualifications before the ALJ constitutes a waiver of any qualifications arguments on appeal. See e.g., Kepple v. Massanari, 268 F.3d 513, 516 (7th Cir. 2001); Shepard on behalf of H.E.S. v. Comm'r of Soc. Sec., No. 17-10197, 2018 WL 1061696, at *4 (E.D. Mich. Feb. 27, 2018)(collecting cases); Pimentel v. Colvin, No. CV 15-2662 (JLL), 2016 WL 3456919, at *5 (D.N.J. June 21, 2016); Birkinshaw v. Astrue, 490 F. Supp. 2d 1136, 1142 (D. Kan. 2007). Thus, we find that Wheeler has waived this objection, but in any event we conclude, as did the ALJ, that Dr. Owens, a physician with an active-retired license, was a competent expert witness in this case.

Wheeler also argues that the ALJ erred in the weighing and evaluating the medical opinion evidence in this case. As we have noted, on this score:

> [I]n determining the weight to be given to a medical source opinion, it is also well-settled that an ALJ may discount such an opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the source's medical opinion, and the treating doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 Fed. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).

Falcone v. Berryhill, No. 3:16-CV-1705, 2017 WL 7222358, at *9 (M.D. Pa. Nov. 29, 2017), report and recommendation adopted, No. 3:16CV1705, 2018 WL 646489 (M.D. Pa. Jan. 31, 2018).

Applying these benchmarks in the instant case, we find that substantial evidence supported the ALJ's evaluation of this medical opinion evidence. In this regard, we are constrained to note that three of the four medical experts who evaluated Wheeler found that he could perform some sedentary work. Thus, in terms of sheer number of opinions, the weight of the medical opinion evidence disfavored Wheeler's claim of total disability. Moreover, the most recent of these opinions, which were based upon the most complete and extensive body of treatment records, consistently found that Wheeler could perform sedentary work.

As for the sole medical opinion favoring Wheeler's claim, Dr. Falvello's July 2014 check box form medical source statement, "it is well settled that: '[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'" Passaretti v. Berryhill, No. 4:17-CV-1674, 2018 WL 3361058, at *8 (M.D. Pa. July 10, 2018) (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)). Thus, this check block form opinion was a thin reed upon which to rest a claim of disability.

Beyond this threshold consideration, we find that other substantial evidence supported the ALJ's decision to afford less weight to the July 2014 opinion of Dr, Falvello. First, the profound degree of impairment described by the doctor was not confirmed through objective testing or entirely congruent with treatment notes. Quite the contrary, these clinical records often recited normal or unremarkable findings. Since an ALJ may discount a medical opinion when it conflicts with other objective tests or examination results and the doctor's treatment notes, this discrepancy between Dr. Falvello's opinion and these treatment records justified giving the opinion limited weight. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). In the same vein, the conservative treatment frequently provided to Wheeler was inconsistent with a claim of complete disability and undermined the weight to be given to this opinion which claimed that the plaintiff was totally disabled. Woodman v. Berryhill, No. 3:17-CV-151, 2018 WL 1056401,

at *6 (M.D. Pa. Jan. 30, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-151, 2018 WL 1050078 (M.D. Pa. Feb. 26, 2018). Furthermore, in this case there was other substantial evidence that the claimant engaged in activities that were inconsistent with this opinion, a factor which further diminished the reliance which could be placed upon the opinion. <u>Tilton v. Colvin</u>, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016). Moreover, by the time of the January 2019 administrative hearing in this case Dr. Falvello's July 2014 opinion was remote in time, and was rendered without the benefit of the additional medical records considered by Dr. Owens.

In this case, the ALJ was required to examine multiple medical opinions, review the medical evidence of record, coupled with Wheeler's subjective complaints regarding his impairments as well as his reported activities of daily living, and was tasked with determining what range of work he could perform, if any. Based upon the greater weight of the opinion evidence, the clinical evidence, as well as Wheeler's self-reported activities, the ALJ found that he could perform a limited range of sedentary work. It is the right and responsibility of the ALJ to make such assessments and we find that substantial evidence, that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Biestek</u>, 139 S. Ct. at 1154, supported these determinations. There was no error here.

We further find that the ALJ's symptom evaluation complied with the requirements prescribed by the Commissioner's regulations and the law. In this regard:

> It is well-settled that an ALJ is not required to uncritically accept a claimant's subjective complaints of disabling impairment. Quite the contrary, Social Security Rulings and Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529; SSR 96–7p, SSR 16-3p. First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b); SSR 96–7p. During this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c); SSR 96–7p, SSR 16-3p. Further, the Social Security Regulations identify a number of factors that may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms, factors which include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions

Shoemaker v. Colvin, No. 3:16-CV-2304, 2018 WL 3245011, at *9 (M.D. Pa. Apr. 5, 2018), report and recommendation adopted sub nom. Shoemaker v. Berryhill, No. 3:16-CV-2304, 2018 WL 3239903 (M.D. Pa. July 3, 2018).

In this case, the ALJ's decision followed the two-step analytical paradigm prescribed by law. The ALJ examined Wheeler's reported symptoms and evaluated

their severity considering the array of medical factors set forth in case law and regulatory guidance. This comprehensive evaluation led the ALJ to the conclusion that, while Wheeler was significantly impaired, he could still perform some sedentary work. That conclusion drew substantial support from the clinical and opinion evidence as well as Wheeler's own recorded statements regarding his level of impairment and activities of daily living.  At bottom, it appears that the plaintiff is requesting that this court re-weigh the evidence. This we may not do. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F. Supp. 2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged by this deferential standard, substantial evidence supported this symptom evaluation in Wheeler's case.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

June 15, 2020